OFFICE COPY

BROWN & FOX, PC.
110 East 59th Street
New York, New York 10022
212-421-1845
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

**MARTAL COSMETICS, LTD.,**

**Plaintiff,**

**-against-**

**HARRY AINI; JACOB (JACK) AINI; MICHAEL AINI; RACHEL (RAQUEL) AINI; The Foregoing Individuals d/b/a International Beauty Exchange, International Beauty Exchange, Inc., K.A.K. Group, Inc. d/b/a International Beauty Exchange, I.B.E. Cosmetics, Inc., I.C.E. Marketing, Corp. a/k/a I.C.E. International Cosmetics Exchange Marketing, and Homeboys; K.A.K. GROUP, INC. D/B/A INTERNATIONAL BEAUTY EXCHANGE; I.B.E. COSMETICS, INC.; I.C.E. MARKETING, CORP. A/K/A I.C.E. INTERNATIONAL COSMETICS EXCHANGE MARKETING; HOMEBOYS INTERNATIONAL, INC.; HOMEBOY'S DISCOUNT, INC.; SYMCHA HOROWITZ; INTERNATIONAL BEAUTY EXCHANGE, INC. (A Florida Corporation) AND JOHN DOES 1-10 BEING PERSONS OR ENTITIES PARTICIPATING IN THE COUNTERFEITING OF THE SUBJECT PRODUCT,**

**Defendants.**

---------------------------------------------------------------x

**<u>FIRST AMENDED COMPLAINT</u>**

**01 Civ. 7595(JG)**

2001 DEC -7 P 1:11
CLERK
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

Plaintiff, Martal Cosmetics, Ltd. ("Martal"), by its attorneys, Brown & Fox, P.C.,

for its First Amended Complaint against the defendants, alleges as follows:

## I.

## The Nature of the Action

1. This action seeks, pursuant to the Trademark Counterfeiting Act of 1984 (15 U.S.C. §§ 1116-17), seizure of counterfeit products bearing plaintiff's trademarks and trade dress, the equipment used to manufacture the counterfeit products, and the records and things documenting the manufacture, sale or receipt of the counterfeit products, as well as treble damages, costs and attorneys' fees. Plaintiff additionally seeks injunctive and monetary relief for false descriptions and representations in commerce under Section 43 of the Lanham Trademark Act (15 U.S.C. §1125), for trademark infringement in violation of Sections 32 and 43 of the Lanham Trademark Act (15 U.S.C. §§ 1114 and 1125), for injury to business reputation and dilution of mark in violation of New York General Business Law § 368-d, compensatory and punitive damages for unfair competition in violation of New York common law and compensatory damages under New York's common law for unjust enrichment.

## II.

## The Parties

2. Plaintiff Martal was, at all times germane to the allegations herein, and is, a corporation organized under the laws of Great Britain with its principal place of business at 146 Great Portland Street, London, England.

3. Upon information and belief, defendant Harry Aini (hereinafter, "H. Aini"), was at all times germane to the allegations herein, and is, an individual who resides in the State of New York and/or regularly conducts business in the State of New York.

4. Upon information and belief, defendant Jacob (Jack) Aini (hereinafter, "J. Aini") was at all times germane to the allegations herein, and is, an individual residing in the State of New York.

5. Upon information and belief, defendant Michael Aini (hereinafter, "M. Aini") was at all times germane to the allegations herein, and is, an individual who resides in the State of New York and/or regularly conducts business in the State of New York. Defendants H. Aini, J. Aini and M. Aini are brothers.

6. Upon information and belief, defendant Rachel (Raquel) Aini (hereinafter, "R. Aini") was at all times germane to the allegations herein, and is, an individual residing in the State of New York. J. Aini and R. Aini are husband and wife.

7. Upon information and belief, defendants H. Aini, J. Aini, M. Aini and R. Aini were at times germane to the allegations herein, and are, doing business as International Beauty Exchange, International Beauty Exchange, Inc., K.A.K. Group, Inc. d/b/a International Beauty Exchange, I.B.E. Cosmetics, Inc., I.C.E. Marketing, Corp. a/k/a I.C.E. International Cosmetics Exchange Marketing, and Homeboys (including variations on the name "Homeboys").

8. Upon information and belief, defendant K.A.K. Group, Inc. d/b/a International Beauty Exchange, was at times germane to the allegations herein, a corporation organized under the laws of the State of New York, with places of businesses located at 124 West 29th Street, New York, New York and 56-25 Flushing Avenue, Maspeth, New York.

9. Upon information and belief, defendant I.B.E. Cosmetics, Inc., was at times germane to the allegations herein, a corporation organized under the laws of the State of New York, with its place of business located at 56-25 Flushing Avenue, Maspeth, New York.

10. Upon information and belief, defendant I.C.E. Marketing, Corp. a/k/a I.C.E. International Cosmetics Exchange Marketing, was at times germane to the allegations herein, a corporation organized under the laws of the State of New York, with its place of business located at 56-25 Flushing Avenue, Maspeth, New York.

11. Upon information and belief, defendants H. Aini, J. Aini and M. Aini have worked and currently work at the premises located at 56-25 Flushing Avenue, Maspeth, New York.

12. Upon information and belief, defendant Homeboys International, Inc. was at times germane to the allegations herein, a corporation organized under the laws of the State of New York, with places of business located at 1805 Church Avenue, Brooklyn, New York, 1712 Avenue P, Brooklyn, New York, and 2017 Ocean Parkway, Brooklyn, New York.

13. Upon information and belief, defendant Homeboys Discount, Inc. was at times germane to the allegations herein, a corporation organized under the laws of the State of New York, with places of business located at 1805 Church Avenue, Brooklyn, New York, 1712 Avenue P, Brooklyn , New York, and 2017 Ocean Parkway, Brooklyn, New York.

14. Upon information and belief, defendant R. Aini works at "Homeboys" located at 1805 Church Avenue, Brooklyn. Upon information and belief, defendant R. Aini has held herself out as being a representative of defendant I.C.E. Marketing, Corp. a/k/a I.C.E. International Cosmetics Exchange Marketing.

15. H. Aini, J. Aini, M. Aini, R. Aini (hereinafter collectively, the "Ainis"), and their d/b/a's identified in paragraph 7 above, and the New York corporate defendants identified in paragraphs 8 through 10 and 11 through 12 above are collectively referred to herein

as the "New York Defendants."

16. Upon information and belief, defendant Symcha Horowitz (hereinafter, "Horwitz"), was at all times germane to the allegations herein, and is, an individual residing in the State of Florida who regularly conducts business in the State of New York.

17. Upon information and belief, defendant International Beauty Exchange, Inc. (a Florida Corporation) (hereinafter, "IBE Florida") was, at all time germane to the allegations herein, and is, a corporation organized under the laws of the State of Florida and regularly transacts business within the State.

18. Upon information and belief, H. Aini, J. Aini, M. Aini and R. Aini have at various times been shareholders and/or officers of the New York corporate entities named herein.

19. Upon information and belief, Symcha Horowitz, M. Aini and R. Aini have at various times been shareholders and/or officers of IBE Florida.

20. Upon information and belief, all the individual defendants and defendant entities participated, among other things, in the purchase, sale, transfer and distribution of the counterfeit products at issue herein.

21. Upon information and belief, the Ainis and Horowitz are the moving, active and conscious force behind the purchase, sale, transfer and distribution of the counterfeit products at issue herein.

22. Upon information and belief, with respect to the sale, transfer and distribution of the counterfeit products at issue herein the named defendants essentially functioned as a single enterprise.

23. Upon information and belief, defendants John Does X, Y & Z are any other persons or entities participating in the counterfeiting of the subject product, including, but not limited to, the manufacture and sale of the subject product. The true names or capacities, whether individual, corporate, associate, or otherwise of defendants Does X, Y and Z are unknown to plaintiff, who therefore sue said defendants by such fictitious names. Plaintiff is informed and believe and thereon allege that each of the defendants designated herein as a Doe defendant is responsible in some manner for the events and happenings herein referred to, and caused injury and damages proximately thereby to plaintiff as herein alleged. To the extent their identities become known to plaintiff, those defendants will be joined and the acts in which they engaged will be pleaded in an amended complaint.

**III.**

**Jurisdiction and Venue**

24. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367. The value of the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

25. All defendants are subject to personal jurisdiction in that they reside, transact or do business in New York and the counterfeit product which is the subject of this action is being distributed in New York. In addition, with respect to defendant Horowitz and IBE Florida, IBE Florida at Horowitz' and the Ainis' direction sold, transferred, conveyed, shipped or otherwise supplied part of the counterfeit product at issue to the New York Defendants.

26. Venue is proper in this judicial district, pursuant to 28 U.S.C.§ 1391(b)(2), because, a substantial part of the events giving rise to the claims occurred in this district and a

substantial part of the property that is the subject matter of the action is situated within this district.

## IV.

## Background Facts

27. Martal is in the business of, among other things, the sale of health and beauty products sold under the "Symba" trademarks. Among other products, Martal sells Symba Medicated Soap (hereinafter, "Symba Soap") and Symba Skin-Lite Smooth Cream (hereinafter, "Symba Cream").

28. Martal is the owner of the trademark "Symba," Registration No. 1,372,091, registered on November 26, 1985 for medicated soap. This Symba trademark was first used in commerce in or about January 1984. Martal is also the owner of another "Symba" trademark, Registration No. 1,480,368, registered on March 15, 1988, for cosmetics and toiletries, including skin lotions, creams and perfumes and was first used in commerce in or about January 1984. In addition, the Symba Soap and Symba Cream are listed as over the counter drug products with the U.S. Food And Drug Administration.

29. The Symba Soap is packaged in distinctive orange cartons with white and red lettering and white and brown dots. The Symba Soap tablet is a distinctive blue color which is embossed with, among other things the Symba trademark. The Symba Cream is also packaged in distinctive orange cartons with white and brown lettering and white and brown dots. The Symba Cream tube is designed similarly to the cartons.

30. The Symba health and beauty products are marketed to an ethnic market which includes the African and Caribbean markets. Martal has devoted efforts to the marketing

and promotion of Symba health and beauty products in said ethnic markets.

31. Net retail sales of Symba products in the U.S. have been substantial. At a minimum, the sales for the last six years have exceeded two million dollars. As the unit cost for the Symba Soap and Symba Cream is small, these sales represent a considerable quantity of product.

32. Products bearing the Symba trademarks and trade dress have come to be known by the African and Caribbean markets throughout the U.S. as health and beauty aids of the highest quality. Therefore, the Symba trademarks and trade dress and the good will associated with them are of inestimable value to Martal.

## V.

## The Counterfeiting Scheme

33. In or about the late 1980's, defendant J. Aini contacted Martal and offered to distribute Martal's products in the U.S. J. Aini advised Martal that he had several companies through which he conducted business in the U.S. These companies included, among others "Homeboys" (and variations on the name of "Homeboys"), ABCE and ICE (hereinafter, collectively, the "J. Aini companies"), which were located in New York. Thereafter, Martal distributed its Symba products in the U.S. through the J. Aini companies.

34. In or about the mid to late 1990's, Martal was approached by defendant Horowitz concerning the distribution of Symba products in the U.S. through various companies, but primarily through defendant IBE Florida, which was located in Florida. Martal subsequently distributed its products through Horowitz, who, upon information and belief, has a business relationship with the Ainis.

35. In or about early 1999, Martal experienced a substantial drop in business with the Ainis', Horowitz, and IBE Florida. At in or about the same time, defendant Horowitz and J. Aini alerted Martal that there was counterfeit Symba products in the market and in fact forwarded samples of the counterfeit Symba products to Martal. At this time, Martal had no knowledge as to who was responsible for manufacturing and selling the counterfeit Symba products.

36. Thereafter, on or about January 31, 1999, a purchase of Symba Soap was made at a Homeboy's store in New York, which, upon analysis was found to be counterfeit. At this time, Martal did not suspect that the defendants were involved in the counterfeiting of the Symba products. Martal's initial lack of suspicion as to the defendants' culpability was based, in part, on the fact that J. Aini and Horowitz brought the counterfeiting issue to Martal's attention.

37. In or about January and February of 1999, Martal notified the Food And Drug Administration ("FDA") of the counterfeit products. Upon information and belief, the FDA commenced an investigation but thereafter referred Martal to its civil remedies.

38. In or about March of 1999, Martal ended its distribution relationship with the Ainis, Horowitz, and IBE Florida and ceased selling any product to them.

39. Martal commenced its own investigation in anticipation of having criminal and/or civil proceedings brought against the culpable party or parties. Martal retained the firm of Michael G. Kessler & Associates ("Kessler Associates") to conduct the investigation. From mid- 1999 through the end of that year, an investigation was conducted throughout the United States. Based upon the fact that the product purchased from the J. Aini companies in New York was found to be counterfeit, the investigation focused on the J. Aini companies, the Ainis, IBE

Florida, and Horowitz.

40. As part of the investigation, Symba Soap and Symba Cream were purchased from an entity known as "International Beauty Exchange", which was then located at 109 West 29th Street, New York, New York. The samples purchased from "International Beauty Exchange" were later confirmed to be counterfeit. Indeed, both the chemical composition of the products as well as the packaging were counterfeit. Moreover, both the counterfeit Symba Soap and Symba Cream falsely state that products are "Produced for: Martal Cosmetics Limited."

41. A comparison of the genuine and counterfeit Symba Soap and Symba Cream reveals that apart from subtle visual differences, the products do not visibly differ as the counterfeit products contain the same trade dress as the genuine product described in paragraph 29 above.

42. After it was confirmed that the product was in fact counterfeit, Martal contacted the Manhattan District Attorney's Office.

43. In or about the beginning of 2000, Martal learned that the entity known as "International Beauty Exchange" had relocated to 56-25 Flushing Avenue, Maspeth, New York. Accordingly, at Martal's direction, Kessler Associates again purchased Symba Soap and Symba Cream from the entity known as "International Beauty Exchange" located at 56-25 Flushing Avenue. The Symba product that was purchased at this time displayed all the same counterfeit features as the previously purchased Symba Soap and Cream. Martal then contacted the Queens District Attorney's Office, which indicated that they would investigate the case.

44. In connection with the investigation by the Queens District Attorney's Office, in or about September of 2000, Kessler Associates again sought to purchase Symba Soap

and Symba Cream from the entity known as "International Beauty Exchange" located at 56-25 Flushing Avenue. Such product was purchased from the "International Beauty Exchange" entity located at 56-25 Flushing Avenue, and subsequently found to be counterfeit like the previously purchased counterfeit products. These results were forwarded to the Queens County District Attorneys' Office, which continued its investigation and subsequently conducted a search, pursuant to a search warrant, issued on July 16, 2001. The Queens's DA's Office seized counterfeit Symba product at the time it executed the search warrant, and such product is presently being stored under the auspices of the DA's Office.

45. Thereafter, on October 26, 2001, Kessler Associates once again was able to purchase counterfeit Symba Soap from the "International Beauty Exchange, Inc." entity located at 56-25 Flushing Avenue through defendant Harry Aini. A visual inspection of the product purchased on this recent occasion reveals that it is identical to the product that was previously purchased from the various "International Beauty Exchange" entities.

46. On November 20, 2001, pursuant to an *ex parte* Order of seizure of this Court dated November 15, 2001, plaintiff and its counsel and private investigators along with U.S. Marshals seized counterfeit Symba product at 56-25 Flushing Avenue, Queens, New York. From the documents and items seized at this location it was learned, among other things, that defendant I.C.E. Marketing, Corp. a/k/a I.C.E. International Cosmetics Exchange Marketing was selling and or transferring Symba products, which upon information and belief, were counterfeit, to, among others, "IBE" and "Harry."

47. The sale and distribution of the counterfeit Symba Soap and Symba Cream by defendants has and will cause substantial and irreparable damage to Martal in at least the

following respects:

(i) The infringement by defendants of plaintiff's Symba registered trademarks and trade dress will mislead and confuse consumers as to the origin and source of the product;

(ii) The distribution and sale by defendants of the counterfeit products bearing the Symba trademarks and trade dress will cause irreparable damage to the invaluable reputation and goodwill that plaintiff has built for its Symba trademarks and trade dress;

(iii) When the consumer purchases the counterfeit Symba products the consumer will be misled into believing that he is purchasing plaintiff's product. However, the counterfeit Symba products potentially exposes the consumer to, among other things, the hazards of contaminated ingredients, defective machinery or negligent handling; and

(iv) The infringement by defendants of plaintiff's trademarks and trade dress will dilute the distinctive quality of the trademarks and trade dress.

**FIRST COUNT**

48. Plaintiff repeats and realleges paragraphs 1 through 47 as if fully set forth herein.

49. In violation of 15 U.S.C. § 1114(1)(a), defendants used in commerce, without plaintiff's consent, either a reproduction, counterfeit, copy or colorable imitation of the Symba trademarks and trade dress in connection with the sale, offering for sale, distribution, or advertising of counterfeit Symba products which use is likely to cause confusion, or to cause

mistake or to deceive.

50. Plaintiff has been and continues to be damaged by the defendants above-stated activities and conduct. Defendants have profited thereby and, unless enjoined, plaintiff's business, goodwill and reputation will suffer irreparable injury which cannot be adequately calculated or compensated for solely by money damages.

**SECOND COUNT**

51. Plaintiff repeats and realleges paragraphs 1 through 50 as if fully set forth herein.

52. In violation of 15 U.S.C. § 1114(1)(b), defendants reproduced, counterfeited, copied or colorably imitated registered trademarks and trade dress belonging to plaintiff and applied such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the offering for sale, distribution or advertising of counterfeit Symba products which use is likely to cause confusion, to cause mistake or to deceive.

53. Plaintiff has been and continues to be damaged by the defendants' above-stated activities and conduct. The defendants have profited thereby and, unless enjoined, plaintiff's business, goodwill and reputation will suffer irreparable injury which cannot be adequately calculated or compensated for solely by money damages.

**THIRD COUNT**

54. Plaintiff repeats and realleges paragraphs 1 through 53 as if fully set forth herein.

55. In violation of 15 U.S.C. §1125(a)(1)(A), defendants, in connection with

the counterfeit Symba products, used in commerce a word, term, name, symbol, or device, or any combination thereof, or a false designation of origin, false or misleading description of fact or false or misleading representation of fact, which was likely to cause confusion or to cause mistake, or to deceive as to the approval of the defendants' goods by plaintiff.

56. Plaintiff has been and continues to be damaged by the defendants' above-stated activities and conduct. The defendants have profited thereby and, unless enjoined, plaintiff's business, goodwill and reputation will suffer irreparable injury which cannot be adequately calculated or compensated for solely by money damages.

**FOURTH COUNT**

57. Plaintiff repeats and realleges paragraphs 1 through 56 as if fully set forth herein.

58. In violation of 15 U.S.C. § 1125(a)(1)(B), defendants in connection with the sale of the counterfeit Symba products, used a word, term, name, symbol, or device or any combination thereof, or a false designation of origin, false or misleading description of fact or false or misleading representation of fact, which in commercial advertising or promotion, misrepresented the nature, characteristics, qualities or geographic origin of the counterfeit Symba products.

59. Plaintiff has been and continues to be damaged by the defendants' above-stated activities and conduct. The defendants have profited thereby and, unless enjoined, plaintiff's business, goodwill and reputation will suffer irreparable injury which cannot be adequately calculated or compensated for solely by money damages.

## FIFTH COUNT

60. Plaintiff repeats and realleges paragraphs 1 through 44 as if fully set forth herein.

61. In violation of New York General Business Law § 368-d, defendants injured plaintiff's business reputation and/or the defendants diluted the distinctive quality of plaintiff's trademarks and trade dress.

62. Plaintiff has been and continues to be damaged by the defendants' above-stated activities and conduct. The defendants have profited thereby and, unless enjoined, plaintiff's business, goodwill and reputation will suffer irreparable injury which cannot be adequately calculated or compensated for solely by money damages.

## SIXTH COUNT

63. Plaintiff repeats and realleges paragraphs 1 through 49 as if fully set forth herein.

64. In violation of the common law of the state of New York, defendants have unfairly competed with plaintiff by manufacturing, packaging, labeling and/or selling the counterfeit Symba products.

65. Plaintiff has been and continues to be damaged by the defendants' above-stated activities and conduct. The defendants have profited thereby and, as a result, plaintiff is entitled to punitive damages from the defendants.

## SEVENTH COUNT

66. Plaintiff repeats and realleges paragraphs 1 through 65 as if fully set forth herein.

67. Based on defendants' counterfeiting of plaintiff's Symba products, defendants have unjustly enriched themselves at plaintiff's expense.

68. Equity and good conscience dictate that defendants not be permitted to retain the profits from their counterfeiting of Symba products.

69. Plaintiff has been damaged by a sum which cannot be ascertained at this time, but is believed to be in excess of $1,000,000.00.

70. Plaintiff has no adequate remedy at law.

**RELIEF SOUGHT**

WHEREFORE, plaintiff demands judgment against the defendants as follows:

(a) that preliminary and permanent injunctions be issued enjoining the defendants and their subsidiaries, parents, affiliates, agents, servants, employees, directors, officers and attorneys and those persons in active concert or participation with them:

(i) From using products bearing Martal's Symba trademarks, Registration Nos. 1480368 and 1372091, Registered on the Principal Register on March 15, 1988 and November 26, 1985, respectively and/or the Symba trade dress;

(ii) From possessing, receiving, manufacturing, assembling, distributing, warehousing, shipping, transshipping, transferring, storing, advertising, promoting, offering, selling, offering or holding for sale, disposing, or in any other manner handling or dealing with any goods, packaging, wrappers, containers and

receptTicals, and any catalogues, price lists, promotional materials and the like bearing a copy or colorable imitation of the Symba trademarks and/or the Symba trade dress;

(iii) From infringing the Symba trademarks and/or the Symba trade dress;

(iv) From otherwise unfairly competing with plaintiff;

(v) From using any reproduction, counterfeit, copy or colorable imitation of the Symba trademarks and/or trade dress in connection with publicity, promotion, sale or advertising of goods sold by defendants, including, without limitation, health and beauty products bearing a copy or colorable imitation of the Symba trademarks and/or Symba trade dress;

(vi) From affixing, applying, annexing or using in connection with the same any goods, false description or any representation, including words or other symbols, falsely describing, falsely representing such goods as being those of Martal and from offering such goods in commerce;

(vii) From using any trademark, trade name or trade dress in connection with the manufacture, sale or distribution of any goods which may be calculated to falsely represent such goods as being connected with, approved by or sponsored by Martal;

(viii) From destroying, altering, disposing of, moving, removing, concealing, tampering with or in any manner secreting any and all

business records, invoices, correspondence, books of account, receipts or any other documents or things relating or referring in any manner to the manufacture, advertising, receiving, acquisition, importation, purchase, sale or offer for sale, distribution, warehousing or transfer of any merchandise bearing the Symba trademarks and/or trade dress;

(ix) From taking any action that may defeat, or may have the effect of defeating Martal's ability to recover and recoup its damages and attorney's fees from defendants, including, but not limited to, prohibiting defendants from transferring any moneys from their current bank accounts to other accounts in order to secret assets, and prohibiting defendants from disposing of any assets in order to reduce the ability to satisfy any eventual monetary award, until such time as any judgment against defendants has been satisfied;

(x) From assisting, aiding or betting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ix) above;

(b) that all infringing material be ordered seized, impounded and destroyed;

(c) that plaintiff be awarded from the defendants its damages in an amount to be ascertained at trial, trebled, and reasonable costs, investigative expenses and attorneys' fees, pursuant to 15 U.S.C. §1117;

(d) that plaintiff be awarded from the defendants punitive damages in an

amount to be ascertained at trial, but in no event less than $10,000,000.00;

(e) that plaintiff be awarded from the defendants an amount to be ascertained at trial, but in no event less than $1,000,000.00 for unjust enrichment; and

(f) that plaintiff be awarded such other and further relief as may be just and proper under the circumstances.

Dated: New York, New York
December 7, 2001

Respectfully submitted,

BROWN & FOX, P.C.

By: ______________________
Rodney A. Brown (RB 7558)

Attorneys for Plaintiff
110 East 59th Street
New York, New York 10022
(212) 421-1845