UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARTAL COSMETICS, LTD.,

                Plaintiff ,

- against -

INT'L BEAUTY EXCHANGE, et al.,

                  Defendants.
------------------------------------------------------------X

**ORDER**

CV 01-7595 (SJF) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

By notice dated March 14, 2007, defendants I.B.E. Cosmetics, Inc., I.C.E. Marketing Corp., K.A.K. Group, Inc., Homeboys International, Inc., Homeboys Discount, Inc., Harry Aini and Michael Aini (collectively, the "NY Defendants") moved pursuant to Federal Rule of Civil Procedure ("Rule") 60(b)(2) for relief they describe as "an Order reconsidering and vacating [my] Report and Recommendation and Order" dated September 22, 2006. Docket Entry ("DE") 359 ("NY Def. Memo."). By notice dated March 19, 2007, defendants International Beauty Exchange, Inc. and Symcha Horowitz (collectively, the "FL Defendants") filed a virtually identical motion. DE 365 ("FL Def. Memo."). The Honorable Sandra J. Feuerstein, United States District Judge, referred the motions to me for decision. Electronic Order dated June 14, 2007. In the interim, on April 18, 2007, the defendants collectively moved to reopen discovery for reasons that overlap almost entirely with those underlying their Rule 60 motions. DE 355. I granted the application of plaintiff Martal, Inc. ("Martal") to hold the latter motion in abeyance pending resolution of the Rule 60(b)(2) motions. Electronic Order dated April 30, 2007. For the reasons set forth below, I deny each of the Rule 60 motions. Having done so, I conclude that the defendants motion to re-open discovery is similarly meritless, and therefore deny it without requiring Martal to submit its response.

I.  Background

In my Report and Recommendation and Order dated September 22, 2006, DE 338,[1] with which I assume the reader's familiarity, I recounted at length the background facts and circumstances of this litigation.  Accordingly, for purposes of resolving the instant motions, I recite here only those facts relevant to the disputes now before me.

A.  Martal's Trademark Registrations

Martal is a British corporation founded by Marcus Sarner ("Sarner") that sells a variety of health and beauty products under the "Symba" trademark.  Docket Entry ("DE") 10 (Amended Complaint) ¶ 1.  Two such products are at issue in this litigation:  Symba medicated soap ("Symba Soap") and Symba Skin-Lite Smooth Cream ("Symba Cream").  *Id.* ¶ 27.

On July 9, 1984, Martal applied to the United States Patent and Trademark Office ("PTO") to register to use the trademark "Symba" on Symba Soap.  *See* NY Def. Memo., Ex. D ("091 Application").  In support of its application, Martal stated that the mark was first used on the soaps before October 1974, and that it was first used in commerce with the United States in January 1984.  *Id.*  On December 14, 1984, the PTO asked Martal, among other things, whether its products complied with the Federal Food, Drug, and Cosmetic Act.  091 Application.  In April 1985, attorney David S. Woronoff ("Woronoff"), who held power of attorney for Martal with

---

[1] The cited document's unwieldy title reflects the fact that it contained both recommendations as to dispositive motions that had been referred to me and orders as to non-dispositive matters that were before me in my capacity as the magistrate judge overseeing discovery.  Consistent with Judge Feuerstein's usage in her order of March 22, 2007 adopting my recommendations with certain modifications, *see* DE 354 at 2 n.1, I will use "R&R" to refer to the former aspect of the document, and "Order" to refer to the latter.

respect to the application, forwarded the PTO's inquiry to A.J. Axe ("Axe"), Sarner's United Kingdom trademark agent. Axe responded on April 29, 1985 as follows:

> [The goods] were not in compliance with the requirements of the Federal Food, Drug & Cosmetic Act regarding labeling, at the time this application was made. A small batch of goods were sent into the U.S. from Canada in January 1984, to test the market, and bore the labeling used in Canada/Great Britain. No further supplies have been despatched, and none were on sale in the U.S. at the time of the application. Supplies destined for sale in the U.S. will be properly labeled when they arrive there, which will be quite soon. The goods have of course been on sale in Great Britain since at least October 1974, and continue to be on sale here and in other countries.... I am not sure how that situation will affect the application; the Applicant has been awaiting the result of this application before committing resources to labeling and packaging, literature and so forth. I therefore have to leave it to you to put the best interpretation on it responding to the Action.

NY Def. Memo., Ex. E. ("Axe Letter").

Woronoff responded to the PTO's inquiry in June 1985. Among other things, he stated that he would

> soon have in his possession packaging which is believed to be in full compliance with federal labeling requirements ... [and that he was] uncertain if the original packaging used for a small test marketing program was in compliance with federal regulations.

091 Application. The PTO registered the mark as Registration No. 1,372,091 (the "091 Registration") on November 26, 1985. *Id.* Martal applied separately to register the trademark "Symba" on a variety of other toiletries; the PTO registered that mark as Registration No. 1,480,368 (the "368 Registration").

  B. <u>Discovery Prior To My Order Of September 22, 2006</u>

Martal filed this action on November 15, 2001, charging the defendants with manufacturing counterfeit versions of Martal's products, including soaps, lotions, and other toiletries under the Symba mark. *See* DE 1 (Complaint). At the initial discovery planning conference on March 5, 2002, the late Honorable A. Simon Chrein, United States Magistrate

3

Judge, to whom the case was then assigned, ruled that before the defendants deposed Sarner, Martal's founder and sole corporate representative, they would first be permitted to depose attorney Michael Kessler, an investigator employed by Martal, as well as a witness designated by Martal pursuant to Rule 30(b)(6). DE 33. Judge Chrein further ordered that Sarner would testify in London, either by telephone or, at the defendants' election and largely at Martal's expense, in person. *Id.*

On August 21, 2002, the defendants served a notice pursuant to Rule 30(b)(6) that required Martal to designate, and to produce for deposition in New York, a witness who could testify on a broad range of topics, including the pleadings in this action, Sarner's medical history, and Martal's investigations of suspected counterfeiting. *See* DE 367 ("Pl. Opp'n"), Ex. H. When Martal responded that Sarner was the only witness competent to testify on those matters and refused to produce Sarner in New York, the defendants moved to compel. *See id.* After hearing argument, Judge Chrein ordered the defendants to complete their deposition of Sarner by February 29, 2003, and affirmed his earlier order requiring that Sarner testify in London by telephone or, at Martal's expense, in person. DE 135.

The parties scheduled Sarner's deposition for February 2003, and agreed to take his testimony in person in London. *See* Pl. Opp'n, Ex. K. Later, however, the defendants decided to cancel that deposition, and proposed instead to take his Sarner's deposition upon written questions. *Id.*; *see* Fed. R. Civ. P. 31. Martal agreed to that proposal, and Sarner's written deposition concluded in September 2003. *See* Pl. Opp'n at 10; NY Def. Memo., Ex. F.

Despite having agreed to take Sarner's written deposition, the defendants continued to seek an opportunity to subject Sarner to oral questioning as well. In March 2004, Judge Chrein

4

denied the defendants' application to participate in a deposition of Sarner that was scheduled to occur in connection with litigation pending elsewhere. *See* DE 285-DE 292. Two months later, the defendants sought permission to take further discovery of Sarner regarding his visual impairment and Sarner's knowledge and awareness with respect to the 368 Registration. *See* DE 329; DE 332. They sought no further discovery on any other matter.

    C.    <u>November 2006 Deposition of Marcus Sarner</u>

In my Order of September 22, 2006, I permitted the defendants to take an oral deposition of Sarner solely on the topic of his knowledge and awareness with respect to the goods listed in the 368 Registration. DE 338. I subsequently limited the deposition to two hours, ordered the parties to conduct it by telephone or video conference, and further ordered them to complete the deposition by November 17, 2006. *See* Electronic Order dated October 11, 2006. That deposition occurred on November 16, 2006. NY Def. Memo., Ex. B ("Tr. of Sarner Depo.").

Contrary to the explicit terms of my order, the defendants' counsel asked extensive questions of Sarner about the 368 Registration, the 091 Registration, and the applications Martal had submitted for both. *See* Tr. of Sarner Depo. at 53-60, 63-67, 77-78, 104-05. Sarner's oral testimony regarding the date on which Symba Soap was first used in commerce with the United States conflicted with Martal's statements in connection with the 091 Application and Sarner's earlier written testimony. *See*, *e.g.*, *id.* at 22-23; NY Def. Memo., Ex. F ("Sarner Written Depo."); 091 Application. On January 24, 2007, Sarner amended his testimony by submitting a signed statement that recited several changes and the underlying reasons. *See* NY Def. Memo., Ex. G ("Errata Sheet"). Among other things, Sarner altered his testimony to be consistent with his earlier written testimony that Symba Soap was first used in commerce with the United States

in January 1984. Errata Sheet. He explained that he was changing his testimony because he had refreshed his memory by reviewing two letters from his trademark agent, and annexed that correspondence to the Errata Sheet. *Id.* One of the letters was the April 29, 1985 letter from Axe to Woronoff.

The defendants now claim that the Axe Letter and Sarner's oral testimony reveal that Martal lied on its application to the PTO about the date on which Symba Soaps were used in commerce with the United States. NY Def. Memo. at 15. On the strength of that rationale, the defendants have filed the three motions here at issue. I discuss the Rule 60 motions first, and then turn to the defendants' motion to reopen discovery.

II. Discussion

    A. The Rule 60 Motions

        1. Procedural Defects

To the extent the defendants are seeking "reconsideration" of my R&R, their motions are procedurally anomalous. At the most basic level, the relief they seek would accomplish nothing: I merely made recommendations to the court, and those recommendations were later adopted. *See* DE 354.[2] That adoption of my recommendations took into account, and rejected, the defendants' extensive objections to my analysis. DE 344; DE 346. A request for reconsideration of my recommendations alone, at this point, would be useless: granting the request would not undo the court's grant of partial dispositive relief to Martal, and no such request to me would be

---

[2] Based on an objection by Martal to some ill-considered language in my analysis, the court modified one aspect of my R&R that is wholly unrelated to the matters now before me. *See id.* at 6. For ease of usage in the following discussion, I will refer to the court's "adoption" of my R&R without noting each time the fact that, stated more precisely, the court adopted the R&R in modified form.

needed as a predicate to asking the district court for the more effective relief of vacating the grant of partial summary judgment.

Leaving aside the fact that the requests for reconsideration of my R&R can accomplish nothing at this point, and are therefore moot, they are also untimely. The local rules of this court permit a party to move for reconsideration within ten days. Loc. Civ. R. 6.3. The instant motions were filed on May 25, 2007 – over six months after I issued my R&R. Thus, to the extent that what the defendants seek really is "an Order reconsidering and vacating the [R&R] to the extent it recommends" granting Martal's requests for dispositive relief,[3] the fact that the defendants invoke the inapposite authority of Rule 60 rather than the more pertinent rules governing reconsideration is of no moment: to the extent they seek reconsideration, the motions are untimely.

Even viewing the motions as an attempt to undo Judge Feuerstein's March 2007 adoption of my R&R, rather than merely an attack on my recommendations as such, the defendants' application for relief is untimely. The motions are based on two pieces of information: the Axe Letter and Sarner's oral testimony. The defendants were in possession of both before Judge Feuerstein ruled on their objections to my R&R: Sarner provided his oral testimony in November 2006, and provided a copy of the Axe Letter as an attachment to his Errata Sheet in January 2007. Even assuming that the defendants were under no obligation to bring the supposedly new information to Judge Feuerstein's attention before she ruled on the objections, at most they had ten days after that ruling to seek reconsideration of it under Local Civil Rule 6.3.

---

[3] Both motions use the quoted language in describing the relief they now seek. *See* DE 359 at 1 (NY Defendants' motion); DE 365 at 1 (FL Defendants' motion).

Such a motion for reconsideration is the proper way to seek relief under the circumstances here; a motion under Rule 60(b)(2) – which may be filed up to a year after the entry of the challenged order – is not. As a general matter, an order granting partial summary judgment is an interlocutory judgment. *See Geneva v. Barr*, 386 F.3d 485, 494-95 (2d Cir. 2004); *Gagne v. Carl Bauer Schraubenfabrick, GmbH*, 595 F. Supp. 1081, 1083-84 (D. Me. 1984).[4] The district court retains complete power over interlocutory judgments, and can modify them or grant other relief as justice requires; such judgments are not reviewable on appeal and are beyond the scope of Rule 60. Fed. R. Civ. P. 60(b) advisory committee notes; *Gagne*, 595 F. Supp. at 1083-84.

Simply put, the defendants have had ample opportunity since coming into possession of the evidence on which they now rely to use it in support of an attempt to persuade both me and Judge Feuerstein to reconsider our views. By sitting on that evidence for months rather than using it in a timely fashion, the defendants forfeited their right to rely on it. For these reasons, I deny the Rule 60 motions as procedurally barred.[5]

---

[4] There is an exception to that general rule where the issuing court specifically denominates its decision as a partial final judgment pursuant to Rule 54(b). The court did not so denominate its grant of partial summary judgment to Martal, and therefore the exception is inapposite here.

[5] My denial of the motions renders irrelevant Martal's related argument that the defendants' assertion that Martal committed fraud on the PTO is barred by the statute of limitations. *See* Opp'n at 2. Even if not irrelevant, the argument would be unpersuasive. In the context of the instant motions, the defendants seek to use their allegation of fraud on the PTO as a defense to Martal's claims, not as the basis for a free-standing claim against Martal. An affirmative defense, however spurious, is not barred by the statute of limitations unless it is coupled with some claim for affirmative relief. *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 164-65 (2d Cir. 2003) ("Potential defendants are not required to seek at the earliest opportunity a declaration that a defense to a claim not yet brought is valid."). At best, Martal's argument is premature; if the defendants succeed in their attempt to reinstate their counterclaims, then there will be an affirmative claim for relief to which the statute of limitations might apply. But as things currently stand, Martal is merely seeking to overcome an affirmative defense, for which purpose the statute of limitations is irrelevant.

2. The Motions Lack Merit

Even if the defendants' motions were not procedurally barred, I would deny them for lack of merit. Whether their motions are best analyzed under Rule 60(b)(2) or as motions for reconsideration under Local Civil Rule 6.3, the defendants would have to show both that they had some new information for me to consider, and that the new evidence would lead to a different outcome. *See* Rule 60 (b)(2) (requiring "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)"); *Rohlehr v. Brookdale Univ. Hosp. & Med. Ctr.*, 2007 WL 210427, at *2 n.4 (E.D.N.Y. Jan. 26, 2007) (reconsideration under Loc. Civ. R. 6.3 is governed by the same standard as a motion under Rule 59(e)); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (movant under Rule 59(e) must "point to controlling decisions or data ... that might reasonably be expected to alter the conclusion reached by the court"). As explained below, they fail on both counts.

a. There Is No New Evidence

A party seeking relief under Rule 60(b)(2) bears the burden of proving that:

> (1) the newly discovered evidence was of facts that existed at the time of [the] dispositive proceeding; (2) [the party was] justifiably ignorant of [those facts] despite due diligence; (3) the evidence [is] admissible and of such importance that it probably would have changed the outcome; and (4) the evidence [is not] merely cumulative or impeaching.

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001); *see also State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 177-78 (2d Cir. 2004). Evidence is "newly discovered" within the rule's meaning if it existed at the time of the challenged order and the moving party learned of its existence only after judgment was entered, but relief is unavailable to a movant who concedes that the evidence was discoverable before the

9

entry of judgment. *See Boxill v. Brooklyn College*, 2003 WL 21554498, at *4 (E.D.N.Y. July 10, 2003); *see also Sumter v. Babbitt*, 1999 WL 1011946 (E.D.N.Y. Sept. 30, 1999).

To the extent the defendants seek relief from Judge Feuerstein's grant of partial summary judgment to Martal (as opposed to the mere recommendation of such a result in my R&R), they plainly cannot satisfy this standard. The "new" evidence on which they rely was not only discoverable before Judge Feuerstein adopted my R&R, it was actually discovered. Judge Feuerstein adopted the R&R on March 22, 2007; the defendants had obtained the Axe Letter some two months earlier, and had taken Sarner's oral testimony some two months before that. The defendants did nothing to bring the information to Judge Feuerstein's attention before she ruled on their objections to my R&R and therefore rely on no "newly discovered evidence."[6]

To the extent the defendants' motion is addressed solely to my recommendations, the analysis is more complex but the result is the same: neither the Axe Letter nor Sarner's oral testimony qualifies as "newly discovered evidence." I discuss the reason for that conclusion as to each cited piece of evidence in turn.

---

[6] I confess to being somewhat at a loss to understand the defendants' procedural approach. They clearly view the Axe Letter and Sarner's oral testimony as information that should produce a different result than the one I recommended. It also appears that they settled on a Rule 60(b)(2) motion addressed to my recommendations – as opposed to Judge Feuerstein's decision – as the appropriate mechanism for achieving that result. *See* DE 353 (letter from defendants' counsel to plaintiff's counsel dated March 19, 2007 – three days *before* Judge Feuerstein's decision – expressing an intention to file the instant motions based on the Axe Letter and Sarner deposition, but not attaching those materials to the courtesy copies provided to the court). Having settled on such an approach, the defendants might reasonably have asked Judge Feuerstein to defer resolution of the then-pending objections to my R&R until I had had a chance to rule on the import of the new information. They did not do so, and instead pursued an approach that seems designed to have given them two chances to win: if they prevailed before Judge Feuerstein, they would have no need for the instant Rule 60 motions; but if their objections were overruled, they could take another shot by citing the "new" evidence. As the defendants' counsel undoubtedly knew, both Local Civil Rule 6.3 and Rule 60(b)(2) forbid such piecemeal litigation.

i. <u>The Axe Letter</u>

The defendants concede that the Axe Letter was discoverable, but accuse Martal of wrongfully withholding it. *See* DE 371 ("Def. Reply Memo.") at 9. Specifically, the defendants assert that Martal should have produced the Axe Letter in response to the defendants' request for "all documents showing Plaintiff's registration(s) ... including but not limited to, all applications for registration and supporting documents." NY Def. Memo., Ex. A; *see* Def. Reply Memo. at 8. The argument is specious: the Axe Letter was not responsive to the quoted document demand. It was written by Martal's trademark agent in the United Kingdom to provide Martal's American trademark agent with information in connection with the latter's submissions to the PTO. Woronoff was not bound by Axe's opinions, and to the extent he did not adopt those opinions, they became irrelevant to the applications for registration and would not be properly characterized as "supporting" documents. More to the point, however, whether Martal should have produced the Axe Letter in response to the document demand is immaterial because there are other reasons the defendants should have discovered it in the exercise of due diligence.

The defendants submitted Martal's application for the 091 Registration as factual support for their opposition to Martal's motion for summary judgment and their cross-motion for summary judgment. *See* DE 279 (Defendants' Exhibits Vol. I, Ex. 10). That application listed Woronoff as Martal's United States trademark agent and it bears several handwritten notations inserted in place of typed information that was struck out. *See id.* Had the defendants taken Woronoff's deposition or sought other information about his preparation of the application they would have discovered the Axe Letter. But they did not seek such discovery, and cannot now be heard to complain about the consequences of their indolence. *See Burnie v. Duncan*, 2006 WL

1420784, at *7 (E.D.N.Y. May 22, 2006) (failure of due diligence where petitioner could have learned of testimony by canvassing for witnesses within financial ability but chose not to do so); *Johnson v. Askin Capital Mgmt., L.P.*, 202 F.R.D. 112, 114-15 (S.D.N.Y. 2001) (failure of due diligence where a plaintiff could have learned of evidence's existence by having a "brief discussion").

## ii. Sarner's Oral Testimony

The defendants' failure to show due diligence is even more pronounced with respect to the oral statements Sarner made during his deposition on November 16, 2006. The only reason it took the defendants so long to obtain the information now at issue is because they affirmatively chose not to obtain it years ago.

As noted above, Sarner's deposition was the subject of considerable litigation before Judge Chrein early in these proceedings. The defendants made several attempts to force Sarner to come to New York for his deposition and failed to win such relief. Instead, Judge Chrein gave them the opportunity to take Sarner's deposition by oral testimony either by telephone or in person, and even ordered Martal to pay most of the defendants' travel expenses if they elected to depose Sarner in person. Thus, as of early 2003, all the defendants had to do to get the information they now describe as newly discovered was to have their attorney ask Sarner some questions. They did not do so. Instead, they cancelled Sarner's oral deposition days before it was scheduled to take place.[7] Further, rather than arranging to conduct the deposition by telephone at

---

[7] The defendants assert that they cancelled Sarner's deposition in London due to "extenuating circumstances ... including: (1) the United States Government's warning for Americans not to travel abroad, (2) the impending war against Iraq; and (3) serious terrorism threats in and around England." Def. Reply. Memo. at 5 n.2. On February 7, 2003, however, the defendants cited several additional justifications for the cancellation, including a scheduling conflict, expenses

the date and time scheduled, or rescheduling it in person for a later date, the defendants abandoned the option of taking Sarner's oral testimony and elected instead to depose him in written form. The defendants' voluntary and unilateral decision to do so, no matter how reasonable in light of other considerations, carried certain obvious risks. One of those risks was that any evidence they discovered later could not be considered "newly discovered evidence" within the meaning of Rule 60(b)(2). The only reason it took the defendants from February 27, 2003 until November 16, 2006 to get Sarner's oral answers to certain questions was that it took the defendants that long to get around to asking them. The defendants did not ask their questions with due diligence, and Sarner's answers are not newly discovered.

     Moreover, the circumstances of this case put in clear relief the wisdom of requiring strict adherence to the standards for newly discovered evidence. The oral testimony on which the defendants seek to rely does not reflect Sarner's actual view of the facts. To the contrary, the defendants seek to rely on answers that Sarner has affirmatively disavowed and corrected in his Errata Sheet. The corrected answers were consistent with the answers that Sarner gave to written deposition questions in 2003. Sarner explains that he changed his answers after refreshing his

---

associated with their counsel's travel to London and the difficulty and cost of arranging a transcriber in the United Kingdom. Pl. Opp'n, Ex. K. A casual reader of the defendants' current explanation might understandably be appalled at such a cynical attempt to exploit truly tragic events that have resulted in thousands of deaths and countless injuries and dislocations as the basis for a *post hoc* rationalization of the defendants' inaction. Lest any party be concerned on that score, that is not at all how I view the matter for purposes of resolving the motions now before me. Instead, I view the invocation of war and terrorism (as well as the additional assertion necessarily implicit in this excuse that international telephone lines were not in operation at the time) as simply one more failure adequately to explain why the defendants did not previously secure the evidence they now purport to find so critical to their cause. In any event, because the evidence the defendants characterize as new would not in any event have had the slightest effect on the outcome, their failure to act diligently is not the only basis for the disposition I now order.

recollection by reviewing certain written materials. If it is true that Sarner would have given the substance of his corrected answers in response to oral questions in 2003, then the defendants' failure of diligence has not only created piecemeal litigation, it has also produced skewed information affected by fading memory and the passage of time. I offer no opinion as to which version of Sarner's answers is factually the most accurate; I merely observe that the defendants' dilatory practices in this case have created a particularly strong reason to view with caution their invitation to rely on "newly discovered evidence."[8]

        b.      <u>The "New" Evidence Does Not Alter My Recommendations</u>

Neither piece of purportedly "newly discovered evidence" would have altered my analysis of the parties' cross-motions for summary judgment. Again, I examine the Axe Letter and Sarner's oral deposition statements in turn.

        i.      <u>The Axe Letter</u>

The defendants claim in conclusory fashion that Axe's statements reveal Woronoff's stated uncertainty to be materially false, that the PTO relied on that statement, and that the 091 Registration is accordingly null and void. *See* NY Def. Memo. at 7-9. Axe informed Woronoff that, among other things, the Symba Soap packaging did not comply with federal requirements

---

[8] The defendants insist that Sarner's Errata Sheet is wholly irrelevant and has no evidentiary significance. *See* NY Def. Memo. at 20-25. I disagree. A deponent may properly review the transcript of a deposition and "sign a statement reciting [any] changes and the reasons given by the deponent for making them." Fed. R. Civ. P. 30(e). The court need not evaluate the reasons underlying the deponent's changes, even if the changes flatly contradict the deponent's original testimony. *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997). Once a deponent exercises this option, both the original testimony and the amended testimony are admissible evidence. *Usiak v. New York Tank Barge Co.*, 299 F.2d 808, 810 (2d Cir. 1962). Accordingly, the alterations contained in Sarner's Errata Sheet do not replace his original testimony; they are an additional part of the evidentiary record, as are Sarner's stated reasons for making those changes. *See Podell*, 112 F.3d at 103.

14

and deferred to Woronoff's judgment regarding communication with the PTO. Axe Letter. Woronoff subsequently informed the PTO that he was "uncertain" whether the original packaging conformed with federal labeling requirements, and that he was awaiting packaging that he believed did comply. 091 Application.

Woronoff's expression of uncertainty may have been disingenuous or sincere, but the Axe Letter does not raise a material issue of fact on that score. At the most basic level, the Axe Letter can do no more than impeach Woronoff's response to the PTO – it is not in itself affirmative evidence that Martal procured the 091 Registration through fraud. That alone suffices to defeat the Rule 60(b)(2) motion. *See Int'l Bhd. of Teamsters*, 247 F.3d at 391 (forbidding reliance on newly discovered evidence that is "merely cumulative or impeaching"). The defendants have presented no evidence that Woronoff's statement of uncertainty was actually material to the application, nor have they demonstrated that the PTO relied on it in granting the registration.

In opposing Martal's motion for summary judgment, the defendants sought to show the existence of a material issue of disputed fact by arguing that Martal acted improperly in obtaining the 091 Registration; they failed to supply evidence demonstrating the issue of such a material factual dispute then, and they have failed to do so now. *See* R&R at 29; *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("The non-moving party may not rely on conclusory allegations or unsubstantiated speculation.") (citation omitted). Absent factual evidence to support the conclusions that the defendants draw from the Axe Letter, the letter would not have altered my report and recommendations.

ii.      Sarner's Oral Testimony

Sarner's oral testimony on November 16, 2006 is similarly insufficient to raise a genuine issue of material fact as to the validity of the 091 Registration on any of the grounds that the defendants now claim. The defendants assert that Sarner's oral testimony at the deposition regarding the date of Symba Soap's first use in commerce demonstrated two separate grounds for holding the 091 Registration void. They claim that the contradictory dates Sarner identified at the oral deposition show that Martal materially misrepresented the date of the Symba Soap's first use in commerce with the United States and Symba Soap was not used in commerce at the time of the application. NY Def. Memo. 12-15.[9] Here again, the fact that newly obtained evidence can be used to impeach Martal's other evidence with respect to the date does not suffice to create a material issue of disputed fact as to the defense of fraud on the PTO.

The defendants further claim that Sarner's oral testimony proves that Martal did not use Symba Soap in commerce within the meaning of governing law before submitting its application, and that the 091 Registration is therefore void. NY Def. Memo. at 17-18, 21-25. Under the standards governing that application, "[a] single instance of use, when the accompanying circumstances indicate an intent to continue the use, has been held sufficient to justify registration of a trade-mark." *Maternally Yours, Inc. v. Your Maternity Shop*, 234 F.2d 538, 542 (2d Cir. 1956); *see also General Cigar Co., Inc. v. G.D.M. Inc.*, 988 F. Supp. 647, 657 n.3

---

[9] In his written deposition answers, Sarner affirmed Martal's representation to the PTO that Symba Soap was first used in commerce with the United States in January 1984. NY Def. Memo., Ex. F. At the November 16, 2006 deposition, Sarner stated variously that the date of first use was 1988, 1989, *see* Tr. of Sarner Depo. 22-24, 1984, *id.* at 25; *id.* at 67, and January of 1984, *id.* at 109. Sarner's Errata Sheet amended his answers to state that the date of first use was January 1984, consistent with his testimony in the written deposition. *See* Errata Sheet at 1.

(S.D.N.Y. 1997). Sarner's testimony – even at his oral deposition – was that Martal sent a small test shipment of Symba Soap to the United States in January 1984 and continued to sell small batches to individuals and larger batches to customers for resale in the United States, until in 1989 it contracted to sell Symba Soap in commercial quantities to ABC Company, a predecessor company of one of the defendants. Tr. of Sarner Depo. at 23-25, 113. The oral answers on which the defendants now seek to rely does not contradict that evidence, but merely impeaches it by negative inference.[10] I offer no view as to whether Martal's activities satisfied the substantive statutory requirement; I merely reaffirm my view that the defendants have failed to raise a genuine issue of material fact on that issue that would suffice as a defense to Martal's claims based on the supposed invalidity of the 091 Registration.

\* \* \* \*

As a general matter, motions for relief under Rule 60(b)(2) are disfavored, and should not be granted absent extraordinary circumstances. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994). The defendants' motions do not come close to meeting that heavy burden. They have improperly delayed bringing their motions to seek the unfair tactical advantage of piecemeal litigation, the evidence on which they seek to rely is new to them only because they did not diligently seek discovery years ago, and that evidence does nothing to alter any fair analysis of the merits of this litigation. I therefore deny both of the defendants' Rule 60 motions.

---

[10] Specifically, the defendants' counsel asked Sarner, "[W]hat product did you sell in 1984 in New York, New York?" Sarner's oral response was, "The lotion. Not the lotion, sorry. The perfume. The perfume and the cream." Tr. of Sarner Depo. at 53. He later amended that answer to include Symba Soap, explaining that he had refreshed his memory after reviewing his correspondence with Axe. Errata Sheet at 1,3. Sarner further explained that he had taken a quadruple dose of his prescribed medication prior to the deposition to control the dire possible effects of stress on his heart condition, and that his medication made him drowsy. *Id*.

B.     Motion To Reopen Discovery

As the defendants tacitly recognize, the deadline for completing discovery has long since passed.[11] Nevertheless, the defendants claim that the "newly discovered evidence" discussed above warrants re-opening discovery for the purpose of taking a further oral deposition of Sarner. Martal has not yet submitted any response to this application; instead, it asked me to hold the matter in abeyance pending resolution of the Rule 60 motions and I agreed to do so. Having now decided the Rule 60 motions I conclude that I need no response from Martal to know that the motion to re-open discovery should be denied.

Further discovery should not be permitted when the moving party has forfeited its opportunities to obtain the evidence it seeks. *See Harris v. Computer Assoc., Int'l.*, 204 F.R.D. 44, 45 (E.D.N.Y. 2001). The defendants have already had substantial opportunity to take Sarner's oral testimony and deserve no more. They forfeited their first opportunity in 2003, and when they supplemented his written responses with testimony in 2006, they uncovered very little non-cumulative relevant evidence despite straying far beyond the limited scope I had allowed.

---

[11] That deadline had apparently expired long before the case was referred to me, and in my communications with the parties' counsel the underlying assumption has always appeared to be that any further discovery would require special permission. The electronic docket does not reveal a specific discovery scheduling order. However, there is at least one reference to a discovery period that the court and the parties recognized as expiring in late 2002. *See* DE113 ("[g]ranting application to extend deadline for parties to file dispositive motions until 'some time (perhaps, thirty (30) days) after completion of all discovery (i.e. December 13, 2002)'").

III. <u>Conclusion</u>

For the reasons stated above, I deny the defendants' motions to vacate and reconsider my Report and Recommendation and Order of September 22, 2006; and I likewise deny the defendants' motion to reopen discovery.

**SO ORDERED.**

Dated: Brooklyn, New York
July 24, 2007

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge