**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MARTAL COSMETICS, LTD.,

                           Plaintiff,              **REPORT AND**
                                                    **RECOMMENDATION**

                - against -

                                                 CV 01-7595 (RRM) (JO)

INTERNATIONAL BEAUTY
EXCHANGE INC., et al.,
                           Defendants.
----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

       By letter-motion filed on May 19, 2008, docket entry ("DE") 381 (the "Motion"), plaintiff Martal Cosmetics, Ltd. ("Martal") seeks a clarification of my Report and Recommendation and Order dated September 22, 2006, DE 338 (the "R&R"), the pertinent portions of which the court adopted by order dated March 22, 2007, DE 354. Specifically, Martal seeks an order dismissing the fifth affirmative defense of all of the "New York Defendants" except Jacob Aini, and also make the corresponding correction to the R&R pursuant to Fed. R. Civ. P. 60(b), and finding that the willfulness of those defendants in trafficking in counterfeits of certain Martal products has been established and may not be addressed at the trial.[1] Motion at 3-4. On June 4, 2008, the Honorable Roslynn R. Mauskopf, United States District Judge, referred the motion to me for a report and recommendation. I now make my report and, for the reasons set forth below, respectfully recommend that the court grant the motion in full.

---

[1] Consistent with prior usage, *see* R&R at 2, "New York Defendants" refers to three individuals (Harry, Jacob, and Michael Aini) and five corporate entities (I.C.E. Marketing, Corp., a/k/a I.C.E. International Cosmetics Exchange Marketing ("ICE"); Homeboys International, Inc.; Homeboys Discount, Inc.; K.A.K. Group, Inc., a/k/a International Beauty Exchange, Inc.; and I.B.E. Cosmetics, Inc.). For convenience, I will use the phrase throughout this report despite the fact that New York Defendant Jacob Aini's interests are not at stake in the instant motion.

I.      Background

I assume the reader's familiarity with my earlier extensive description of the parties, the issues in this case, and the course of the litigation leading to the summary judgment motions as to which I made the recommendations now before the court. R&R at 2-19; *see also* DE 373 at 2-6 (providing factual and procedural history of motions resolved in my Order dated July 24, 2007). In order to file this report as quickly as possible and thereby preserve, if at all feasible, the parties' ability to try this nearly seven-year-old case on June 16, 2008, I will forego a detailed rehearsal of that description and proceed immediately to the merits.[2]

---

[2] For several months leading up to yesterday's referral order, the parties had been anticipating, and presumably preparing for, the trial date of June 16, 2008. *See* DE 378 (order dated February 12, 2008). Decisions concerning the trial schedule are of course committed to the sound discretion of the assigned district judge, and there may well be reasons having nothing to do with the instant motion that make the June 16 trial date impractical. I refer to the trial date only to explain that the familiarity with the case that I have gained over the past few years leads me to be particularly sensitive to the interest of disposing of any matter in it that may come before me as quickly as possible.

To be sure, some of the nearly seven-year length of these proceedings is due to factors beyond the parties' control – but a great deal of it is due to the defendants' frequent resort to dilatory tactics. *See, e.g.*, DE 373 (Order dated July 24, 2007, discussing the defendants' dilatory practices at length). My concern about additional delay is compounded by my cognizance of the age and medical condition of the plaintiff's principal, *see* DE 341 (Affidavit of Dr. J. Malcolm Walker), who is presumably – and if so, quite understandably – anxious to see this case resolved as soon as possible. It is for those reasons that the instant report provides less of a discussion of the background facts and proceedings than the court might otherwise expect.

Similarly, because the issues raised in the instant motion are relatively straightforward, as discussed below, and because a quick resolution may allow the parties to proceed to trial this month as previously scheduled, I believe it is both fair and reasonable to ensure that any objections to this report be ripe for resolution while the June 16 trial date can still be salvaged if the court so desires. I therefore direct that any objection to this report be filed no later than June 9, 2008, and any response filed by June 11, 2008. *See, e.g., Hispanic Counseling Ctr., Inc. v. Incorporated Village of Hempstead*, 237 F. Supp. 2d 284, 289-290 (E.D.N.Y. 2002) (holding that 10-day period for filing objections to a report and recommendation "may be shortened where exigencies exist") (citing *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978)).

II.  Discussion

   A.  Dismissal Of The Fifth Affirmative Defense

Among the matters discussed in the R&R was a motion by Martal seeking summary judgment in its favor on its claims for trademark infringement under the Lanham Act, *see* 15 U.S.C. § 1051 *et seq.*, and for unfair competition under New York law. As part of that motion, Martal sought the dismissal of several of the affirmative defenses that the New York Defendants had pleaded in responding to Martal's claims. Martal contends that the R&R recommended (and that the court, in adopting the bulk of the R&R, therefore ordered) dismissal of all of the New York Defendants' affirmative defenses, save only for two exceptions. Specifically, Martal acknowledges that I did not recommend dismissal of the third affirmative defense (contesting the personal liability of defendants Jacob Aini and Rachel Aini, neither of whom has any interest at stake in the instant motion) and that I did not recommend dismissal of the eleventh affirmative defense (contesting the validity of Martal's trademark for Symba Cream based on an allegation that Martal committed a fraud on the United States Patent and Trademark Office). *See* Motion at 2-3 (quoting R&R at 49). Of relevance here, Martal asserts that I recommended the dismissal of the New York Defendants' fifth affirmative defense, in which they asserted that any infringement was innocent. Motion at 2-3.

The New York Defendants disagree, and quote portions of the R&R to support their contention that I did not recommend dismissal of their fifth affirmative defense, that the court therefore did not dismiss that defense, and that the defense may therefore still be litigated at trial. In so arguing, the New York Defendants transparently seize on an editing error: even the most cursory review of the record demonstrates that their position is thoroughly and obviously wrong.

3

My intent, which I believe was plain and which I am confident the court understood when reviewing the R&R, was that the fifth affirmative defense should be dismissed.

To be sure, the R&R contains two errors, one in the first paragraph on page 49, and the other in the second bulleted paragraph on page 63. In both cases, as reproduced in the margin, I mistakenly referred to the New York Defendants' "fifth" affirmative defense rather than to their "eleventh" such defense. R&R at 49, 63.[3] But the only way that a reader could fail to perceive my intention that the court dismiss the fifth affirmative defense, notwithstanding those errors, would be to read those two sentences completely divorced from the document in which they appeared and from the context of the motions before me. Indeed, with respect to the first such error, in which I referred to the New York Defendants' "fifth affirmative defense concerning the validity of the 368 Registration," R&R at 49, even taking the sentence out of all context would not suffice to confuse a fair reader who was actually interested in discerning the substance of my recommendation, as it was the *eleventh* affirmative defense that "concern[ed] the validity of the

---

[3]   For all of the reasons set forth above, with the exception of their third affirmative defense that concerns only the personal liability of Jacob and Rachel Aini and *their fifth affirmative defense concerning the validity of the 368 Registration*, the New York Defendants have failed to develop a record that would allow their affirmative defenses or counterclaims to stand as a basis for denying judgment to Martal on its claims. I therefore recommend granting partial summary judgment in favor of Martal and dismissing all of the New York Defendants' other affirmative defenses and counterclaims.

R&R at 49 (emphasis added).

[I respectfully recommend that the court enter an order] [d]enying Martal's motion for summary judgment with respect to the New York Defendants' third and *fifth* affirmative defenses, but granting Martal's motion with respect to all other affirmative defenses raised by the New York Defendants and dismissing same[.]

*Id*. at 63 (emphasis added).

4

368 Registration." Moreover, the defendants' position is nonsensical when considered in its proper context: a recommendation that the court deny Martal's motion to dismiss the fifth affirmative defense but grant such relief with respect to the eleventh affirmative defense would have been plainly and completely incompatible with the legal analysis I provided in explaining my recommendation. *See*, *e.g.*, R&R at 34-36 (concluding that the New York Defendants trafficked in counterfeit Symba products); *id*. at 40 & n.14 (concluding that "many of the [New York Defendants' affirmative defenses] are necessarily insufficient in light of the preceding analysis of Martal's motion for summary judgment" on its claims, including "the assertion that they were innocent infringers (fifth affirmative defense)"); *id.* at 45-46 (concluding that the New York Defendants had raised a question of fact with respect to the validity of the trademark for Symba Cream).

    B.    <u>Willfulness</u>

The parties further dispute whether the R&R determined that the New York Defendants' conduct was willful – a finding that, once adopted by the court, would entitle Martal to enhanced statutory damages pursuant to 15 U.S.C. § 1117(c)(2). The New York Defendants are correct that I made no such *explicit* determination in the R&R with respect to the appropriate amount of damages to be awarded to Martal. I concluded instead that a recommendation as to damages was premature because the full extent of the New York Defendants' infringing conduct was not yet known. See R&R at 34. Nevertheless, as has become tiresomely predictable in this litigation, the New York Defendants' description of the record is one that unreasonably distorts it. In particular, the New York Defendants allow that in the R&R, I "reasoned that it is *conceivable* that [New York Defendant] ICE was aware of the possibility it was selling counterfeit products."

5

DE 385 at 3 (emphasis added) (citing R&R at 35). To the contrary, my conclusion was not that ICE's awareness was merely within the realm of possibility, but rather that the evidence would support no other interpretation. R&R at 35 ("In light of th[e] undisputed evidence, it is *inconceivable* that all of the Symba Cream and Symba Soap ICE sold after 1998 was genuine, and that ICE was *not* aware of the possibility that it was selling counterfeit products.") (emphasis added).[4]

However, notwithstanding the New York Defendants' distortion of the record, their conclusion about the precise limits of my earlier recommendations is correct: I did not explicitly recommend a specific finding that the record sufficiently established the New York Defendants' willfulness to grant summary judgment in Martal's favor on the Lanham Act claims. From that narrow, hyper-technical premise, the New York Defendants argue that the issue remains to be tried with respect to the Lanham Act claims, at least in terms of damages and attorneys' fees.

Such litigation would not take place in a vacuum. As Martal correctly notes, I also recommended that the court grant Martal summary judgment against all the New York Defendants (not including Jacob Aini) on its state law claim of unfair competition – a recommendation that the court adopted. Implicit in that recommendation, and in the court's subsequent order, was a finding that Martal had met its burden in establishing each relevant defendant's bad faith. *See* R&R at 36-37 and cases cited therein; DE 386 (Martal's reply letter) at 3-4 and cases cited therein. More explicit were other portions of the R&R that plainly ascribed

---

[4] Another far less substantive, but more ironic distortion of the record – or more precisely, an outright misrepresentation, albeit one of no moment – is the New York Defendants' assertion that "[a]t no place in the R&R ... does the Court use the words 'wilful,' [or] 'malicious[.]'" DE 385 at 3; *but see* R&R at 32-33 (describing defendants' arguments as "almost willfully obtuse"); *see also id*. at 44 (using the word "malicious"), 61 (using the word "[w]illful").

to Harry and Michael Aini – and, through them, to *all* of the corporate entities that they used to traffic in counterfeit products – a state of mind that any fair reader would recognize as indistinguishable from bad faith. *See* R&R at 38 ("The evidence is sufficient to support an inference that Harry Aini was a 'moving, active conscious force behind the defendant corporation's infringement ... and the defendants offer no countervailing evidence that they claim creates a genuine dispute of fact on this score.'" (quoting *Bambu Sales, Inc. v. Sultana Crackers*, 683 F. Supp. 899, 913 (E.D.N.Y. 1988) (internal quotation omitted)); *id*. at 39 (same regarding Michael Aini); *id*. at 36 ("In short, the record amply demonstrates that each of the many corporate guises in which the Ainis have clothed themselves bears responsibility for trafficking in counterfeit Symba products.").[5]

I believe that the R&R foreclosed further litigation on the issue of the New York Defendants' willfulness. If, as seems wholly unlikely under the circumstances, the district judge to whom the case was then assigned did not consciously have a similar intent in adopting my recommendation, I respectfully urge the court to make such a ruling now.

III.     Recommendation

For the reasons set forth above, I respectfully recommend that the court grant plaintiff Martal's motion for clarification in full.

IV.     Objections

This Report and Recommendation will today be filed electronically on the court's ECF system and is deemed served on all parties as of the date of such filing. Any objections to this

---

[5] Tellingly, in listing the many pejorative terms that the New York Defendants (incorrectly) assert I did not use in the R&R, DE 385 at 3, their counsel omits the synonymous "bad faith." *See* DE 385 at 3.

7

Report and Recommendation must be filed no later than June 9, 2008; any response to such objections must be filed no later than June 11, 2008. *See* n.2, *supra*. Failure to file objections within that period, absent the entry of an order extending that deadline pursuant to Federal Rule of Civil Procedure 6(b)(1), will waive the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchs. Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

    **SO ORDERED.**

Dated: Brooklyn, New York
      June 5, 2008

                                              /s/ James Orenstein
                                              JAMES ORENSTEIN
                                              U.S. Magistrate Judge